May it please the Court, good morning. This is an appeal of a summary judgment order from the Western District of Virginia in an AIDS discrimination case. It's a single issue. Appeal on that is whether the District Court erred by awarding summary judgment to the employer. There are four topics. The matter is well briefed. There are four topics I propose to cover with the Court this morning. And first, the Court's principal error below was its failure to give credit to the direct evidence in this case, the Court finding that it was not temporally related to the termination. Second, is the Court's failure to properly apply Reeves v. Sanders plumbing products, which we contend is dispositive of this case. The third is the Court's overarching error in violation of Poland v. Cotton of looking at the evidence in light most favorable to the nonmoving party. And the fourth, and this is only if I have time, to talk about the distinction between a but-for cause versus the but-for cause, which is working its way through the lower courts. So first, the District Court below said that, yes, this direct evidence is evidence of discriminatory animus, but I can't consider it because it was not temporally related, that is, it was not close in time to the decision to terminate. What is your best, this issue interests me, what is your best evidence of that temporal, contemporaneous existence? So, the age comment and the discharge. Yes, sir. Judge Shedd, it's on page 404 and 405 of the transcript, excuse me, the joint appendix, which is pages 85 and 86 of the transcript, and I want to turn there. Arthur is being questioned then about... What page is it? 404. Okay, 404. Okay. Page 404, beginning with line 20, Arthur is testifying. And then he says, and then in November, he came to me. Now, November is November of 2009, just days before he was fired from his position as finance manager, Mike Reynolds. And then in November, he came to me and asked me, he said, when are you going to quit? I said, Mike, I done told you that I'm going to work until my full retirement age of 66. I think he was 59 at the time. He said, well, I think you need to go ahead and hang it up because you're just too old to do your job. I said, well, I've been doing it, what's the difference? Now I'm in good health. I can still work. Then after that is when he went back to Merrill Smith and the letter was written. That's the letter of December 4, 2009, which was days before he was fired. And so on this particular point, the district court just got it wrong. And I don't know why, because we had briefed it for the court. It's in our summary judgment brief. We argued it before the court, but on this factual... Well, I think if I read the judge's order correctly, it seems to me that maybe when he asked the question I just asked, different pages were offered up to him, that oral argument. Is that, am I wrong about that? I don't know. Well, listen, you read his order. It certainly appears the only way you can read it, because I went back and read those pages. And quite frankly, they appear to end up what Judge Moon said. But this is a new page. But you say this is a comment that the supervisor says, well, I think you need to go and hang it up because you're just too old to do your job. And you say that was days before the dismissal? Yes, sir. November of 2009, because Judge said if you look at the very next lines, which I'm repeating myself now, lines 4 and 5 on page 86 of the transcript, 405 of the joint appendix, then after that is when he went back to Merrill Smith and so forth. So this When was he fired? It was weeks later, right? Yeah, in December of 2009. Yes. So weeks later, less than 30 days later. I can't tell you exactly when this statement was made in November of 2009. So Judge Thacker, at most, it was a matter of weeks before he was fired. And there's all sorts of precedent. We've cited on brief that a month before, two months before, six months before, whatever the case may be, it's all deemed sufficient by the court. So this is the principal error of the district court below. And had it found the way that we think it should have found, there'd be no McDonnell-Douglas analysis. We've just gone to the direct evidence analysis, and the case would have gone on to trial. And the direct evidence is here. You can read it for yourself. You can see it started with this first day of work. He asked two questions. What's your name? How old are you? You're too old to be working here. I'm going to get rid of you. And then Mike Reynolds got rid of every single older driver. So what about the complaints that were detailed in Ms. Smith's letter? Yes. Are they, I mean, is it disputed that she received the evidence of, she's the director of nutrition in the Lynchburg school system. Is it disputed that she received evidence from something like five of 19 units about Ms. Arthur? It is not disputed, Judge Wilkinson, that there were complaints about Arthur's work to some extent reflected in that December 4 letter. I draw your attention to why that is, because Mike Reynolds went to her and said, I want you to help me get rid of Ralph Arthur. Is it disputed that she threatened to terminate the account if Arthur was not removed? The letter says what it says. The letter says what, I can't dispute the contents of the letter. The letter documents complaints that have been occurring about Mr. Arthur for a long period of time, not just after she may have talked to Mr. Reynolds. Right. Back to at least August of 2009. And that's why this case is no different than Reeves v. Sanders plumbing products. Listen to the complaints in that case about the plaintiff. Here are the complaints concerning the plaintiff there. Let me say this. I think you might have been wise to start with direct, your direct evidence case. You're answering questions about the prima facie. If they did get a complaint about him, that might well do away with your prima facie case. But you don't think you need that to win this case, do you? I don't need that to win that case. So while you were attacking that letter and you have attacked it, your attack on that letter and the result of what we think about that letter doesn't matter to your summary judgment. The opposition does. It does not. But I didn't want to avoid your question. No, no, no. I was just getting it straight in my mind while you were answering it. But your position would be, as I understand it here this morning, is that we do have direct evidence. We defeat summary judgment based on that direct evidence. Then they can offer that letter if they want to as evidence and let a jury decide. You might have some argument about what the charge is. Yes. That's my point. Of course, the other drivers were within the protected age group. Some of them were older than Mr. Arthur. No. When the route was divvied up, there was only one driver who was age 32, younger than the outside of the protected age group. No. No, Judge Wilkinson. Arthur was the oldest driver at the time he was fired. Now, again, now I'm pushed over and I don't mind argument, but I'm pushed over to arguing the third problem of McDonnell Douglas and I shouldn't be there at all. Take a look at page 142 of Reid's. But the overall question we have to ask, no matter what, is what was the reason for the were these complaints false? I mean, as Judge Thacker points out, they go back for a long number of years and they concern things that are pretty serious, including some driving accidents. And the letter says, I received calls with complaints that he's driving when entering school grounds is too fast, has created risky situations with other delivery trucks as well as with staff members and possibly students entering the building. Now, that's what she says and the school board and the company are both on notice. And if they continue to let him drive and a student gets seriously injured in the parking lot or a staff member gets seriously injured in the parking lot, there's going to be a lawsuit saying, what were you thinking about? You had noticed this was brought to your attention about this driving record and the risk it was creating and you went ahead. My response, Your Honor, is, and I don't know how many times I've stood here and argued before Judge Wilkinson heard you call that grist for the mill. I should be making that argument to seven people, not three, because this case should have gone to a jury. Look at the complaints in Reeves. He was put on probation, 90 days probation for unsatisfactory performance. He intensely falsified company pay records. He was guilty of shoddy record keeping. He did not act. Who are we talking about now? Reeves, the plaintiffs in Reeves versus Sanders. Let's talk about this case. Because one of the basic tenets of business is that you don't quarrel with a customer. If a customer, and in this case, it was the leading customer from the person who held the account, and she's saying, I've got real problems. And if you're in business, you don't say, oh no, you don't really have those problems. I can't believe she would have written the letter unless she had the problems. It's a detailed letter and it contains serious things, which is that the crates were rolling through the cafeteria on wheels. If you've ever been in a hospital or a law firm or a cafeteria or any place with carters, you're worried about it because somebody at a high rate of speed can knock somebody else off their feet. And then you have a broken hip in that situation. And what were supposed to do is just ignore this? There's no evidence that she fabricated these complaints. Your Honor, I'm about out of time now, but the complaints are based upon hearsay. They're not admissible on summary judgment. Yeah, but what's the decision maker supposed to do? Say, oh, this is hearsay. I wonder whether this fits within such and such an exception to federal rule of evidence 803. I mean, people in the business world don't work that way. Judge, the decision maker is the fellow who said, I want to get rid of Arthur because he's too old. And then he testified, he testified that I never said that. I never tried to get rid of Arthur. And it's not my fault. I didn't make the decision. Charlie Bem and Tony Hayward made it. And we deposed both of them, and they said no. So here's what the Supreme Court said. The Supreme Court said with respect to that particular point that the jury, the jury is entitled. Isn't your argument, isn't your argument, and that's the first time I saw that evidence today, you pointed out before, and I'm going to ask the other side about it. But your argument is all this stuff about complaint from a customer, which is valid. Yes, sir. In the business world. Yes, sir. You say here the problem is you have a decision maker saying I'm going to get rid of you because you're old and you think you should put that to the jury to see who they believe. You might lose. They might believe they fired him because of the complaint, but you think you're entitled to at the testimony that the testimony that Reynolds told him a couple of weeks before he fired him, he was going to get rid of him because he's too old. Yes, sir. Judge Wilkinson's argument is a jury argument. Every driver got complaints. The summary judgment is never granted in an age discrimination case. No, no, no, no. Everything is a we said, he said situation no matter how bad the record. No, look at our precedent and Wilhelm versus Bluebell, Lovelace versus Sherwin-Williams, Spagnuolo versus Whirlpool Corporation and Reeves versus Sanders Plumbing Products. That's the precedent the court should be applying. And look, please, at page 707 of the joint appendix. Every driver got complaints. You can't. They're milk drivers. You always got too much milk, too little milk. You're working too fast. You're working too slow. Like me. Previous driver have a complaint from the head of the largest account that Smith requested a meeting with Mr. Reynolds, number one, and then Smith threatened to terminate the account. And as I understand it, she had never threatened to do that with any, she'd never requested a meeting with Reynolds over any other driver. And she'd never threatened to terminate the account if a driver wasn't dismissed. As I understand it, those were singular events. She never requested a meeting concerning any driver, period. Any driver, period. Mike Reynolds said, I want you to help me get rid of me. And then she went along with it. No, the meeting in, I think Judge Wilkinson's talking about the meeting in August of 2009. Yes. Yes, there was a meeting in August of 2009. And they talked about Ralph Arthur. And there were some complaints based upon hearsay. And the jury should consider that. The jury should consider whether to render verdict for, which gets me, I'm out of time completely to my overarching concern. The overarching error is the failure to look at the evidence in light most favorable to Arthur, which is what the Supreme Court reminded us last term in Toland versus Cotton. Why do you think the Supreme Court took a garden variety abuse of force case to make the point that too many of these cases are getting kicked out on summary judgment? There've been a great many summary judgment dispositions. They've been up before the Supreme Court and certiorari has been denied after that. To be sure, to be sure. But that's the directive the Supreme Court provided. It is not saying don't ever get a summary judgment, no matter how bad somebody's, no matter how bad a loss of business is going to suffer, no matter what kind of danger is posed to students and staff and the school system. And no matter what the age of the workforce is, and no matter whether a meeting between the person who handled pet dairy's largest account and the individual and threatened to terminate the account. If this individual was determinated and those were unique events, there were other older drivers and nobody ever made those. Nobody ever went to this link to say this is an impossible situation. There were no older, other older drivers. They were, there were no, my time keeps running out. I keep getting more time. So I guess that's a good thing. You've had some, you have some rebuttal. I speak to losing it on the back end is what I suspect, but I don't know that. All right, very well. I'll sit down then. Thank you very much for your time. I'll answer any questions that you might have, any additional questions. Thank you. Thank you. May it please the court. My name is Victor Cardwell from the law firm of Woods Rogers. Along with my partner, Frank Friedman, I'm here on behalf of Pet Dairy. As an initial matter, Judge Shedd, you asked a question about the direct testimony or direct evidence on page 4445, the joint appendix. I'll suggest as in most things in this case, the court needs to look very closely at the entire record, not just a portion, because that question did occur. And by plaintiff's testimony, somewhere in November of 2009, he said, and you should hang it up because you're too old. That's the testimony. But the court would read further just a few lines down. I was deposing Mr. Reynolds, Mr. Arthur, and I said, when did that, when did you have that conversation with Mike Reynolds? I read directly from the transcript. He had it with me in November about me quitting again. November of 2009, my question. His answer, and I think this is illustrative to this entire case, 2009. I said, I'm going to quit. I'm going to quit until I'm at my full retirement, he said. He said, that's Mike Reynolds. Well, okay. And he let it go at that. Mr. Arthur never consistently testified to any direct evidence. No, no, no. You may be entitled to that inference. I mean, you are not entitled to that inference. If Mr. Reynolds says, if he says, you need to hang it up because you're too old to do your job, and the plaintiff goes, no, I want to stay. And he goes, okay, I'll just leave it at that. That doesn't mean that he didn't think, or he wasn't motivated to find because of his age. You're taking the inference that on those two statements that aren't completely consistent. You get the inference that the statement, hang it up because you're too old to do your job, goes away. But it doesn't. No, Judge, should I? You agree with me? Absolutely, I'm good with you. Listen, I looked through the record too, and so this honestly, quite frankly, is, I think, new to me this morning. But why isn't that enough to get the plaintiff passed summary judgment on a direct evidence case? Well, Your Honor, the but-for requirement of the analysis of the ADEA case requires that the plaintiff demonstrate the age, as this court has articulated in prior case law, has to be the motivating, or the factor, the factor, not a motivating factor. In this particular instance, if that occurred in November of 2009, and you assume that it did, the intervening event of Ms. Smith penning a memo in great detail about the poor service would dictate that that's what the company had to respond to. By the way, isn't your argument, and it may be, isn't your argument the same whether this Absolutely it is, Your Honor, yes. So your argument is, what he said, that you need, he has said, I'm going to get rid of you because you're too old, I'm going to fire you because you're too old, in the past, in the past. Yes, sir. But most recently, he says, you need to hang it up because you're just too old to do your job. Your assessment is, this case is the same whether that statement's made by Reynolds or not made by Reynolds. Judge Shedd, that's exactly right. That's exactly right. Our position is that the but-for-a-cause requirement here was Mr. Arthur's long history of poor performance, but culminated, which culminated in the memorandum. I think Judge Thacker probably pointed out, and Judge Wilkerson asked the question, what about the August of 2009 inservice before the school year started? And that was a result of complaints that the school had received over the course of time, Ms. Smith, had received over the course of many years. Now the question, how do we know for sure that that was the motivation for the firing? And how do we know under these facts that wasn't just a cover for the firing because of age? Your argument is, if you get somebody else, some third-factor person to say something, it wipes out, I'm not saying you did it, I'm saying it wipes out age discrimination? No, Your Honor, I'm not suggesting that if someone actually engaged in the nefarious type of conduct that's been alleged here- No, I'm not talking about nefarious, I'm talking about anything. Well, what I would suggest is because of the but-for requirement, when a customer speaks in the industrial world today and the business world today, our clients respond, we respond. And when a customer, over the history of time, over the course of time- Yeah, and the other thing is that letter, it has two characteristics to it. She put her signature to it. Yes. You can't just, I mean, I think the appellant's trying to gin up a conspiracy, but you can't she put her signature to it and the complaints are detailed and they stretch over many years and they're from a variety of complainants and they cover a variety of performance-based problems. She requests a meeting, she threatens to terminate the account if this individual is not terminated and that wasn't done with other drivers. And I have not seen a case where a business is actually required to argue with the customer at the risk of losing its largest account and not to accept the customer's version of things. Oh, no, no, no, you're wrong, you're wrong. The customers can say, the heck with that. And not only is the business put up, is required to put up with a risk of losing its largest account, but the school system is required to risk the safety of a school staff and faculty and students from someone whose driving record has been detailed. If you're on notice as a business and you're on notice as a school system, that a driver is putting the physical safety of people in a parking lot at risk and you say, oh, no problem, you're going to have a real problem on your hands. And I think the but-for cause, the Supreme Court has not come close to outlawing summary judgment in these cases where you have something like this, that is a telling letter. Your Honor, I would agree with you 100%. And to address any concerns about how it came to be, on direct examination, Ms. Smith in Joint Appendix 603, specifically, she was asked. You know, if we give you full credit for that letter, let me give you a hypothetical. Yes, sir. This is just a hypothetical. What if the defendants go, my God Almighty, that person's too old, we want to fire him because he's old. Gosh, when's the right time to fire him? We're going to get rid of him. The decision made, he is going because he's too old. And then the next day you get a complaint from your best customer, you then say, thank God that for that fortuitous event, we were going to fire him anyway, but now we have cover to do it. That's not age discrimination? Judge Shedd. That's not. You think that's not? Under the gross case of the Supreme Court, it is not. It's not actionable age discrimination. And what I would suggest to you on these facts, without the hypothetical, Ms. Smith was asked by Mr. Reynolds, Mr. Reynolds, not to help me get rid of him. He said, and I'm quoting Ms. Smith's deposition testimony on the question, I would like you to put your concerns in writing. So that's the purposes of my question. I don't buy. I'm not giving any credit to that conspiracy theory and all that because it seems to me that's what a person does. If somebody complains, you go put it in writing, because if you don't, guess what? You get sued because that complaint was never made. I understand that. To yours and Judge Wilkerson's questions, we should talk about Mr. Arthur as an employee. But in addition to the history of complaints against Mr. Arthur, there's also a history of comments about his age, starting from the day he was hired till weeks before he was fired. So why isn't the jury entitled to consider that as to whether or not that is the but or reason he was fired, particularly at this stage, at this summary judgment stage? Judge Sackler, I believe that the court was proper in considering the temporal nature, the remote nature of the 2005 allegation, again, plaintiff's testimony, that Mr. Reynolds said, you're too old to be here. Now, Mr. Reynolds himself was 40-some odd years old at the time. The workforce there, as Judge Wilkerson probably noted, they're all over 40, save one person in this particular instance, and most are in their 50s and 60s. His age was not the issue. His speed and recklessness was the issue. The 2008 age comment, again, too remote in time, but notwithstanding all those things. 2009. The 2009 comment is that it was discussed with Judge Shedd. There was an intervention there. And once the school spoke, the client had to respond. And I'll tell you, Mr. Reynolds was operating with a history with Mr. Arthur. A history. Mr. Arthur tapped an SUV, which he initially did not have in the act. Yeah, the history was Reynolds kept saying, I'm going to get rid of you because you're too old. That's a history, too. It may very well be, Your Honor. It may very well be. But in this case, the but or causal, the causal reason for his termination was his job performance or lack thereof. He had a long history of job performance issues. And ultimately, the school… How do we know that? His testimony, Mr. Arthur's testimony. I hit an SUV and it caused it to flip three times during Appendix 446 through 447. I hit an SUV, I tapped it, but it flipped three times. Mr. Arthur got fired by Barnes & Noble for spilling a gallon of milk. Now, he got fired by a customer and the school and Mike Reynolds and Pet Dairy did not fire him at that point in time. They just replaced him and put him somewhere else. But he got fired by another client for spilling a gallon of milk. Mr. Arthur always has a reason, always has an excuse. But that's what happened. The school complained on numerous occasions before, even August of 2009, about receiving dirty milk and milk being left on the loading dock. Let's ponder that for a moment. It seems to me you're making one heck of a good jury, Your Honor, that we did not fire him because of his age, despite the fact that his supervisor kept telling him that. And despite the fact the supervisor told him that a couple weeks before he fired him, we didn't fire him for that reason. We fired him because of his performance. And it seems to me that's a good jury argument. But I'm not quite sure how that letter from, and I accept the letter being completely valid, how that overrides the other evidence in the record. Well, this court has previously addressed the but-for cause termination. Judge Wilkinson, Judge Thacker, particularly, I might say it wrong, Tavernier decision, Tavernier. It says a plaintiff bringing a disparaging treatment suit pursuant to ADEA must prove that age was not merely a motivating factor of the challenge at birth employment decision, but it was, in fact, its but-for cause. And here, this evidence is, the district court properly considered this evidence in light, most favorable to the plaintiff, or to the appellant, Mr. Arthur, and it concluded that on these facts, there was no way to demonstrate that age was not the but-for cause. I do believe, if this court would look at this decision, I believe Judge Wilkinson's analysis is accurate, an employer who is serving the general populace, an employer who has customers, they have to be responsive to those complaints. And when you have a person, and Mr. Arthur was this person, he simply could not take responsibility. He refused to slow down. It's interesting, it's almost ironic, that when you talk about age cases of the general matter, are they moving too slow? Are they not getting something done? Mr. Arthur was absolutely inopposite. If a case like this goes to a jury, what you're saying to employers is that he said situation on these sorts of statements will override a detailed letter from the company's largest customer. And in the future, if he said he said he's going to override this sort of letter, this sort of complaint, and I don't think any doubt has been cast on its validity, then you're going to get school systems and you're going to get employers saying, you know, I don't know, we can't do anything about this situation because we've got a he said, he said, she said, or he said, he said, which counts as direct evidence. And the courts, no matter how bad the performance issues and the rest, we can't do anything about this because the courts are going to regard it as a jury issue. And, you know, that puts not only an employer, but a school system in one very difficult situation. Judge Wilkinson, it does indeed. That's exactly right. That's exactly right. Does Mr. Reynolds deny making any such statements? Mr. Reynolds specifically denies making these comments. Any age statements. He feels as though they came out of whole cloth. Mike Reynolds will tell you that his best workers oftentimes are his more senior workers because they are dependable. And you're right. This is milk delivery, which means these drivers are leaving the facility at 4 or 5, 3 to 4 o'clock a.m. to have milk delivered. Particularly in these age discrimination cases, more than any other case, more than any other cases I know, there are statements about age that, you know, even with a number of older drivers on the force, there are statements about age that can be, even when they're talking about generational passage or whatever, people talk about age all the time. But if a dispute, or he said, he said dispute over age, and they come up in this type of case more than any other, is going to override something like this letter. But it's not just the implications for business. It's the implications for school systems and customers and whatever. It, you know, it wreaks havoc. I will suggest, Judge Wilkson, you're exactly right. The danger here is that this is a pretty clear cut employment decision. This was a clear cut employment decision that resulted in a lawsuit. And that's exactly why Mike Reynolds was not the ultimate decision maker. The testimony was very clear that Mike Reynolds had a boss, a district or area manager. Mike Reynolds then had to, and Pet Dairy's protocol, as testified by Mr. Hayward, is any termination performance based of this nature. But we have these, if you look over these cases, you have these allegations of direct evidence of some age-related statement. In the age statements, for some reason, I think more frequently than in other, than in other cases. And I don't understand how somebody is driven by age animus when other, when he's a fairly old person himself and when other drivers on the force are in their late 50s or early 60s or whatever, they're not being fired. They'd have to do, if they were going to get rid of older people and senior drivers, they'd have to dismiss their whole driver workforce. Maybe they haven't been fired yet. Is that possible? I mean, I don't want to, listen, I think it's just going to come down to the law as you stated. That's not the law as I understand it. But you stated, I think you stated honestly that you can make all the assertions about firing you because of age and if there's some, somebody else gives you some reason to do it, you're home free. That's your argument. Yeah, no, it is. In essence, I appreciate, I appreciate your honesty. You may be right on that. That's not right. But you may be right on that. The fact is, and I think that Judge Wilkinson is more right, the reason a growth decision in age is treated differently than other factors under Title VII, for example, is that age is such a bright line event. Race is there. Gender is there. And those factors don't change. But we all get older. But we're not, but I think Judge Sherr brings up a good point. We're not saying that everybody has free license to make all the age-related statements they want. It depends on the record in the particular case. And it depends on who the complaint was, how many complainants there were, what the detail was, how, it depends on the facts and circumstances of the performance regulation, the performance record in this case. And the thing that makes this, the damage this can do is that the record of poor performance was so strong. If the record were closer, it would be a certain time. But this now is going to serve as some sort of benchmark that no matter how badly somebody performs, they can create this issue and you can't do anything about it. Judge Wilkins, I think you're exactly right. And Judge Sherr, to be specific, when you asked me the hypothetical, the hypothetical could this occur, that was my response. And I believe that I could make an argument based on Gross and Tavernier that that. But that's your view. Well. If there is a subsequent basis to get rid of someone, any comments about find them because of age, get washed out. That's your analysis. If it's a proper intervening cause, Your Honor, it may well be that is my analysis. I don't know what proper is, but yeah, an intervening cause that could justify firing. On these particular facts, on these particular facts, the district court was proper in granting settlement judgment because the documentation was there. Documentation was a result of a longstanding issue. Mr. Arthur had demonstrated over the course of time poor performance issues through the tapping an SUV. He had had those performance issues. Ultimately, it culminated in a situation where the largest client said, I can no longer have this person serve us. You need to get me a new person. I mean, they actually, you know, they stuck with him for a considerable period of time. I mean, I read this and it seems to me that most companies would have dismissed him a good while back. The district court was accurate in pointing out that even on 2005, when the first alleged statement was made, Mr. Arthur, like most of us, was simply an at-will employee. And had the bad actor really chose to or wanted to get rid of him, he could have done so any number of times in between. There were many events in between, from the Barnes & Noble event to the pump. You said it's different between gender and race. Why would your theory be any different there? Well, the Gross case talked about how mixed motive factors can apply in those Title VII cases, but in the age cases in particular, it does not. And I can accept the congressional intent and the court's interpretation of that law. I see that my time is almost up. If there are no other questions. Thank you, sir. Thank you. In this case, you have Mike Reynolds saying that he had nothing to do with the termination and tried to save Arthur's job. A permissible inference from that is that he was performing at least satisfactorily to keep his job. Point two, with respect to the ages of the other drivers, Judge Wilkinson, Arthur was first replaced by a gentleman 23 years older than him. Arthur had the busiest route. That route was then redivided between individuals 8, 14, 16, and 36 years younger than him. Then the route was redivided again between people ages 14, 16, 17, and 25 years younger than him, one of whom was embezzling product from the company, a felony, and traveled with Mike Reynolds to the Caribbean. Arthur, who had performance issues, maybe like everybody else, was fired because he was too old to do the job. If you reverse this case, you may need to address the the but for cause versus a but for cause. I simply draw to your attention two cases. The Fifth Circuit's case, Leal versus McHugh, 731F3 at 405, and a case from the Western District, excuse me, the Middle District of North Carolina, EEOC versus City of Greensboro, 2010 U.S. District, Lexus at 132159. If there are no additional questions, I'll rest. Thank you very much. Thank you.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Stephanie D. Thacker